IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| COLT TECHNOLOGIES, L.L.C.,<br><br>   Plaintiff,<br><br>vs.<br><br>TEKVET TECHNOLOGIES CO., and DAVID ROBBINS,<br><br>   Defendants. | ORDER AND<br><br>MEMORANDUM DECISION<br><br>Case No. 2:08 CV 449 (TC) |
| TEKVET TECHNOLOGIES CO., and DAVID ROBBINS,<br><br>   Counterclaimants,<br><br>vs.<br><br>COLT TECHNOLOGIES, L.L.C., TALI HALEUA, and DARIN SMITH,<br><br>   Counterdefendants. | |

In this breach of contract case, Plaintiff Colt Technologies (Colt Tech) argues that Defendants TekVet Technologies (TekVet) and David Robbins failed to pay the full $1.5 million purchase price for the intellectual property and other associated assets they purchased from Colt Tech. Based on the language of an amendment to the Asset Purchase Agreement between the two parties, TekVet contends that it owed Colt Tech up to $1.5 million only if the company

satisfied each of several specified conditions.  Because the court concludes that the language of the contract provision is unambiguous and that Colt Tech does not dispute that it failed to satisfy the conditions, TekVet's motion for summary judgment on Colt Tech's claim of breach of contract is GRANTED.

## BACKGROUND

The parties do not dispute the following material facts.  On November 1, 2006, TekVet Acquisition Company, an entity formed by Mr. Robbins, entered into an Asset Purchase Agreement with Colt Technologies (Colt Tech), Colt Investment Group LLC, and WeTried LLC (collectively "Sellers") and equity holders Tali Haleua, Bret Smith, Darin Smith, Randy Conklin, Richard Keene and Michael Crouch.  The Asset Purchase Agreement provided that TekVet Acquisition Company would pay the Sellers $1.5 million for the purchase of intellectual property, licenses and license agreements, and other associated assets related to a remote monitoring system, which tracks the temperature of livestock to diagnose and treat illness.  The Asset Purchase Agreement also provided that TekVet Acquisition would provide Sellers with an ownership interest.[1]

The parties signed a First Amendment to the Asset Purchase Agreement on November 20, 2006.  The First Amendment recognized the validity and binding nature of the original Asset Purchase Agreement and the $1.5 million purchase price, but amended the terms of the purchase price and provided for an extension of time in which the parties could close the transaction.  The Sellers signed the Bill of Sale on December 8, 2006.

---

[1] The Complaint only addresses the alleged monetary loss incurred by Colt Tech when TekVet allegedly "breached the contract by only paying $322,971.61 of an agreed to $1,500,00.00 purchase price."  (Compl., 2, Docket No. 2.)  The court need not address the ownership interest.

TekVet Acquisition Company drafted a Second Amendment to the Asset Purchase Agreement, which was signed on February 21, 2007.  The Second Amendment, which is the focus of the dispute here, recognized the validity and binding nature of the original agreement, but provided new details as to how the $1.5 million purchase price was to be paid.  The parties do not dispute the validity or application of the Second Amendment.

According to Section 2.1 of the Second Amendment, the $1.5 million purchase price was "to be paid as follows:"  TekVet would pay $322,917.61 to Colt Tech at closing and up to the balance after closing in specified increments within a provided period of time.  (Ex. 6, 1, Def.'s Mem. Supp. Summ. J., Docket No. 11.)  The language of Section 2.1 of the Second Amendment is as follows:

> 2.1    Purchase Price.  The Purchase Price to be paid to Sellers for all the Purchased Assets (the "Purchase Price") is One Million Five Hundred Dollars and No Cents ($1,500,000.00) . . . to be paid as follows: Three Hundred Twenty-Two Thousand Nine Hundred Seventeen Dollars and Sixty-One Cents ($322,917.61) to be paid by delivery of a check made payable to Colt Technologies at Closing; the payment of up to Four Hundred Twenty-Seven Thousand Eighty-Two Dollars and Thirty-Nine Cents ($427,082.39) . . . to certain individuals . . . to return the cash they advanced to Sellers prior to December 31, 2006; the payment of up to Seven Hundred Fifty Thousand Dollars and No Cents ($750,000.00) to Colt Technologies on the satisfaction of certain existing liabilities as set forth below . . . . Other than the cash payment of Three Hundred Twenty-Two Thousand Nine Hundred Seventeen Dollars and Sixty-One Cents ($322,917.61), all amounts shall be paid or delivered post closing. . . . The amounts payable to individuals . . . who provided funds to Sellers prior to December 31, 2006, shall be paid by Buyer on receipt by Buyer of proof of the funds advanced to Sellers satisfactory to Buyer and the delivery of an executed release of all claims against Buyer, whether based on the royalty interest held by such individual, or otherwise, satisfactory to Buyer. . . .  The Seven Hundred Fifty Thousand Dollars and No Cents ($750,000.00) to be paid on satisfaction of certain obligations shall be paid to Colt Technologies as follows:
>
> (i)    One Hundred Eight Thousand One Hundred Fifteen

>        Dollars and Sixty Cents ($108,115.60) to Colt Technologies within ten (10) business days of the receipt by Buyer of a final satisfaction and release of lien . . .
>
>        (ii)     One Thousand Four Hundred Thirty-Two Dollars and Eighty-Nine Cents ($1,432.89) within ten (10) business days of the receipt by Buyer of a final satisfaction and release of the judgment entered . . . in favor of Express Recovery Services, Inc.
>
>        (iii)    One Thousand Five Hundred Ninety-Three Dollars and Seventy-Five Cents ($1,593.75) within ten(10) business days of receipt by Buyer of a final satisfaction and release of the judgment . . . in favor of Bonneville Billing.
>
>        (iv)    One Hundred Thirty-Two Thousand Dollars and No Cents ($132,000.00) within ten (10) business days of receipt by Buyer of a final dismissal with prejudice and settlement and release of all claims with respect to the lawsuit brought by James Tramner against Colt Technologies, LLC . . .
>
>        (v)     Four hundred Fifty Thousand Dollars and No Cents ($450,000.00) within ten (10) business days of receipt by Buyer of a recorded release of the tax lien filed by the Internal Revenue Service against Tali J. Haleua . . .
>
>        (vi)    Fifty-Six Thousand Eight Hundred Fifty-Seven Dollars and Seventy-Six Cents ($56,857.76) within ten (10) business days of receipt by Buyer of a recorded release of the tax lien . . . against Tali J. Haleua by the Utah State Tax Commission.

(Ex. 6, 1-3, Def.'s Mem. Supp. Summ. J., Docket No. 11.)

The closing took place on February 13, 2007, and TekVet Acquisition Company paid Colt Tech $322, 917.61 as required by the Second Amendment. Although Colt Tech does not dispute that all of the conditions outlined in the Second Amendment were never satisfied, it argues that these were not conditions precedent to the payment of the full $1.5 million purchase price. Colt Tech also disputes that it was the party with the burden of satisfying these conditions.

**ANALYSIS**

A party is entitled to summary judgment under Rule 56 of the Federal Rules of Civil Procedure if it can demonstrate that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. Mosier v. Callister, Nebeker & McCullough, 546 F.3d 1271, 1275 (10th Cir. 2008); Kellogg v. Metro. Life Ins. Co., 549 F.3d 818, 825 (10th Cir. 2008). The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Here the parties agree as to the material facts. Colt Tech and TekVet further agree that the Asset Purchase Agreement, First Amendment and Second Amendment are valid and applicable and that Utah law governs. The sole issue for this court to consider is the meaning of Section 2.1 of the Second Amendment. While TekVet contends that the language of the provision of is clear and unambiguous on its face and imposes various conditions precedent to payment, Colt Tech argues that this court must look to extrinsic evidence in order to properly understand the Second Amendment.

When interpreting a contract under Utah law, a court must first look to the contract itself. "If the language within the four corners of the contract is unambiguous, then a court does not resort to extrinsic evidence of the contract's meaning, and a court determines the parties' intentions from the plain meaning of the contractual language as a matter of law." Bakowski v. Mountain States Steel, Inc., 52 P.3d 1179, 1184 (Utah 2002). A court must consider each provision "in relation to all of the others, with a view toward giving effect to all and ignoring none." Green River Canal Co. v. Thayn, 84 P.3d 1134, 1141 (Utah 2003) (quotations omitted). A contract provision is ambiguous only if it is "capable of more than one reasonable interpretation because of 'uncertain meanings of terms, missing terms, or other facial

deficiencies.' " Winegar v. Froerer Corp., 813 P.2d 104, 108 (Utah 1991) (quoting Faulkner v. Farnsworth, 665 P.2d 1292, 1293 (Utah 1983)). Whether a contract contains an ambiguity is a question of law. Id. If an ambiguity exists, the intent of the parties becomes a question of fact. WebBank v. Am. Gen. Annuity Serv. Corp., 54 P.3d 1139, 1145 (Utah 2002) (quotation omitted).

As Colt Tech contends, TekVet Acquisition Company did agree to pay Sellers $1.5 million in the Second Amendment. But the unambiguous language of this provision makes clear that payment of the purchase price would be divided into phases. Only $322,917.61 of the $1.5 million purchase price was to be paid to Colt Tech at closing with no other conditions attached. The remainder of the purchase price, the amounts of $427,082.39 and $750,000, were to paid in full after closing and only based on the satisfaction of specific unambiguous conditions. The failure to comply with the conditions in full would reduce the amount owed.

The court bases its conclusion on the following language of the contract. TekVet Acquisition Company agreed to pay "up to" $427,082.39 to certain investor individuals named in Exhibit A. (Ex. 6, 1, Def.'s Mem. Supp. Summ. J., Docket No. 11.) Section 2.1 provided the company "shall pay" this amount "on receipt . . . of proof" that those individuals had advanced specific paid funds to the Sellers and on "the delivery of an executed release of all claims" by those individuals against TekVet Acquisition Company. (Id. 2.) (The parties do not dispute that this did not occur.) To resolve any doubt that these were indeed conditions of payment, Section 2.1 directs that if an individual fails to comply within sixty days of the closing date, that individual would lose any claim to the money, and "[a]ny amounts unpaid . . . shall thereafter be the property of" TekVet Acquision Company. (Id.)

Moreover, although TekVet Acquisition Company further agreed that it would pay "up

to" $750,000 to Colt Technologies, Section 2.1 demonstrates in at least two distinct places that payment would occur based on certain conditions. (Id.) (The parties agreed that payment would occur "on the satisfaction of certain existing liabilities as set forth" and that up to $750,000 would "be paid on the satisfaction of certain obligations." (Id.)) Section 2.1(i) through (v) clearly and unambiguously describe the conditions required for payment of up to $750,000. These provisions detail the liabilities at issue, which include various outstanding judgments entered against Colt Investment Group LLC and Colt Technologies LLC and state and federal tax liens against Counterdefendant Tali Haleua, what needs to be done about the liabilities, and what amounts will be paid within a given period of time when the issue has been appropriately handled.

The court's conclusion that the language of Section 2.1 details various conditions precedent for payment is supported by the intentions of the parties in the Second Amendment.[2] See Kimball v. Campbell, 699 P.2d 714, 716 (Utah 1985) ("Whether a promise is conditional depends upon the parties' intent, which is derived from 'a fair and reasonable construction of the language used in light of all the circumstances when [the parties] executed the contract.'") (quoting Creer v. Thurman, 581 P.2d 149, 151 (1978)). The language of Section 2.1 shows that TekVet Acquisition Company, as the buyer of intellectual property and other associated assets, was concerned about unintentionally securing a variety of undesirable liabilities as well. In an

---

[2]Although the court does not comment on the precise meaning of the provision, language in the original Asset Purchase Agreement seems to express similar concerns. The original Asset Purchase Agreement provides that the purchase price of $1.5 million would "be paid and delivered to Colt Technologies on behalf of Sellers; provided that, $250,000 of the cash shall be held in escrow to be paid directly to holders of liens, judgments, or claims against Sellers to the extent necessary to obtain a complete and absolute release from such holders and $500,000 shall be held in escrow until the release of the state and federal taxes (sic) liens against Tali Haleua." (Ex. 1, 2-3, Defs.' Mem. Supp. Summ. J., Docket No. 11 (emphasis in original).)

attempt to resolve this concern, TekVet Acquisition Company explicitly conditioned payment on the Sellers resolving these issues.  Because the Sellers admittedly failed to meet these conditions, the unambiguous language of the contract indicates that they are not entitled to the full $1.5 million purchase price, and the claims for breach of contract are invalid.  See Harpver v. Great Salt Lake Council, Inc., 976 P.2d 1213, 1217 (Utah 1999) ("Failure of a material condition precedent relieves the obligor of any duty to perform.").  Considering the clear and unambiguous language of the Second Amendment, the court does not need to review extrinsic evidence as urged by Colt Tech.  See Daines v. Vincent, 190 P.3d 1269, 1279 (Utah 2008).

Finally, Colt Tech argues that unduly focusing on Section 2.1 of the Second Amendment renders meaningless the other parts of the contract that repeatedly refer to the purchase price as $1.5 million.  This argument is not compelling.  Colt Tech's position renders meaningless all of Section 2.1, which constitutes nearly two pages of the Second Amendment to the Asset Purchase Agreement.  In interpreting a contract under Utah law, the court must be careful to not focus exclusively on one choice phrase, such as the purchase price amount, but to consider all of the provisions, giving effect to all and ignoring none.  The court's conclusion that Section 2.1 establishes various conditions precedent best accomplishes this duty.

Colt Tech further argues that considering the Second Amendment to impose various conditions precedent to payment is implausible as TekVet Acquisition Company was the party that was more logically suited to accomplish the various conditions mentioned in Section 2.1. Colt Tech argues that TekVet Acquisition Company had the duty to accomplish the tasks listed in Section 2.1, including for example securing the satisfaction and release of various judgments and the recorded release for various tax liens.  This arguments is equally unpersuasive.  Because the conditions referenced in Section 2.1 involve the Sellers or parties with some sort of legal

relationship with the Sellers, Colt Tech was in a much better position to complete the conditions. As counsel explained during the hearing, for example, TekVet Acquisition Company would have had little luck at the Internal Revenue Service or the Utah Tax Commission in securing recorded releases for the unpaid taxes of Mr. Haleua.  Conversely, Colt Tech was in an excellent position, for example, to secure a final satisfaction and release of judgments entered against Colt Investment Group LLC and Colt Technologies LLC.

## CONCLUSION

For the reasons set forth, TekVet's motion for summary judgment is GRANTED. (Docket No. 10.)  Colt Tech's cross motion for summary judgment is denied.  (Docket No. 20.)

DATED this 16th day of April 2009.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
Chief Judge